IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-121 |
| | ) | |
| RODERICK M. OWENS | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendant's objections to the magistrate judge's report and recommendation [doc. 52]. The government has not responded within the time allowed. A transcript of the suppression hearing and the exhibits have been provided to the court, so the objections are ripe for the court's consideration. For the reasons discussed below, the objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

## Factual Background

On September 6, 2006, Knoxville Police officers went to the apartment of Phyllis Warfield to investigate a shotgun she had pawned. The shotgun had been stolen from a homeowner who was murdered during the robbery. Before approaching Ms. Warfield at her apartment, Officer Chris Bell investigated Ms. Warfield and discovered that in the past she had filed charges against a man named Roderick Owens. In fact, there were outstanding warrants for Owens. Officer Bell had a photograph of Owens when he went to the apartment.

Ms. Warfield gave the officers oral and written permission to search the apartment. The officers found defendant Owens hiding underneath a child's bed. The officers arrested Owens based on the outstanding warrants and took Owens, Ms. Warfield, and another individual found in the apartment to the police station for further questioning and to verify identifications. Owens was fingerprinted and placed in an interview room by himself. Officer Bell checked on Owens about three times, explained that he was going to be questioned about the shotgun, and asked if he needed something to drink or a restroom. Owens began talking about the shotgun, but Officer Bell stopped him and told him to "sit

and relax."[1]  Officer Bell testified that he did not want Owens talking to him unless it was recorded.

When Owens was being moved to the second interview room with video equipment for his interview, Officer Bell testified that he stopped briefly and quietly asked another officer to sit in on the interview.  Owens became excited and upset and said something like, "If you all are going to be whispering and keeping secrets and talking about stuff behind by back, maybe I should ask for a lawyer."  Officer Bell told him that if he wanted a lawyer all he had to do was ask for one, and he would not be questioned.  Officer Bell explained to Owens that he was going to take him to the interview room and read him his *Miranda* rights, and if he wanted a lawyer he should ask for one.

Once in the second interview room, the interview was video taped.  Officer Bell explained to Owens that he was not under arrest at that time for any crime related to the shotgun, and Owens was read his *Miranda* rights.  Before signing the waiver, Owens stopped and asked about number 4, saying something like, "I want to ask you about this one."  Number 4 states: "IF YOU WANT A LAWYER BUT ARE UNABLE TO PAY FOR ONE, A LAWYER WILL BE APPOINTED TO REPRESENT YOU FREE OF ANY COST TO YOU."  Supp. Hrg. Exh. 2.  Officer Bell explained that if Owens was charged with a crime and

---

[1] Owens was in the first interview room for some time because the police were attempting to check Owens' fingerprints against the fingerprints found on the shotgun, and Officer Bell wanted to interview Ms. Warfield before confronting Owens about the shotgun.

3

he could not afford an attorney, the court would appoint one for him. Owens then signed the waiver, and the interview proceeded. About seventeen minutes into the interview, after he was shown pictures of the murder victim, Owens said, "Yeah, I do want a lawyer." Owens, entirely on his own, continued to ramble for two more minutes, and the interview was concluded. At the end of the video tape, Officer Bell told Owens that he was being held on the outstanding warrants and would be taken to jail.

Owens testified at the suppression hearing that while he was in the first interview room, Officer Bell told him he was investigating a homicide. Owens said he asked for a lawyer, and Officer Bell responded by asking him if he had a lawyer to call. When Owens said no, Officer Bell told him he could not get him a lawyer. Owens also testified that Officer Bell told him that when he was ready to talk, just "holler out" the door, and Officer Bell would come talk to him. Owens also said that there was not a second interview room; his video taped interrogation was in the same room in which he waited. Finally, Owens testified that he was never told he was being arrested on warrants until he was on his way to the Penal Farm. Officer Bell denied that there was any discussion about a lawyer other than what he described in his testimony. Further, Officer Bell testified that Owens was in two different interview rooms at the police station; one while he was waiting to be interviewed and one for the video taped interview.

4

## Legal Discussion

In his motion to suppress, the defendant raised two issues: (1) the legality of the search of the apartment and (2) the violation of his rights to have an attorney present during questioning. The magistrate judge found that Ms. Warfield consented to the search, but even if the search was a violation of the Fourth Amendment, the defendant's statements should not be suppressed. *See New York v. Harris*, 495 U.S. 14 (1990). The defendant has not objected to this conclusion.

The defendant, however, does object to the magistrate judge's conclusion that the defendant waived his right to counsel until the end of interview when the interrogation stopped. Basically, the defendant argues that the waiver of his right to an attorney was neither voluntary nor knowing. He says that Officer Bell's statements that he would not call anyone unless the defendant had the name of a lawyer and Officer Bell's misleading statements about only getting a lawyer if he was charged with an offense would have led a "reasonable person [to] believe that it is going to be difficult to get an attorney."

On the issue of credibility, this court agrees with the magistrate judge that Officer Bell's testimony was more credible. Officer Bell denied making any such statement about not calling a lawyer unless the defendant had the name of one to call. Furthermore, the defendant's argument that he believed he could not have an attorney present during questioning is contradicted by the record. First,

the defendant is not a stranger to the criminal justice system. He has several prior charges and convictions for serious felonies (*i.e.*, aggravated robberies and attempted murder), and he admitted that he had been advised of his rights on some of these charges. Yet, he now would have this court believe that he did not understand or believe that he would get a lawyer based on what Officer Bell told him.

Second, the video tape confirms Officer Bell's description of events related to the interrogation. When the interrogation began, the defendant said nothing about his alleged earlier request for a lawyer. Other than his inquiry about number 4 on the waiver form, he raised no issue about wanting a lawyer before he answered questions. He freely answered questions about the shotgun and about how it had come to be in his possession.

Finally, and most telling, when Officer Bell began to question the defendant about the homicide, the defendant stopped the interview and said he wanted a lawyer. This fact supports the court's conclusion that the defendant was not misled by anything Officer Bell may have told him about getting a lawyer. The court finds that the defendant knew, based on the waiver that was read to and signed by him, that he did not have to answer any questions unless a lawyer was present. And, when the questioning focused on the homicide, he knew to stop answering questions and ask for a one.

Under these circumstances, the court finds that the defendant's waiver of his right to any attorney was voluntary and knowing. His statements about his possession of the shotgun need not be suppressed.

## Conclusion

The court has reviewed *de novo* the pleadings, transcript, and exhibits, including the video taped suppression hearing, and **ADOPTS** the magistrate judge's report and recommendation [doc. 49]. It is hereby **ORDERED** that the defendant's objections to the report and recommendation are **OVERRULED**, and the defendant's motion to suppress evidence [doc. 37] is **DENIED**.

ENTER:

    *s/ Leon Jordan*
United States District Judge